# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

Nos. 02-2883/02-3109

_____

| | | |
|---|---|---|
| Good Stewardship Christian Center, a Fellowship of the Full Gospel Baptist Church Fellowship, Inc.; A. Louis Vaughn; Good Stewardship Christian Church; Randy Whitson, | * * * * * * * | |
| | * | |
| Appellants, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Empire Bank; Sue Lasater, in her official capacity as Vice President of defendant Empire Bank and in her personal capacity; Joseph McCarty, in his official capacity as Senior Loan Officer of defendant Empire Bank and in his personal capacity; Mike Williamson, in his official capacity as President of Defendant Empire Bank and in his personal capacity; Central Bancompany, Inc., | * * * * * * * * * * * * * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  June 12, 2003

Filed:  September 4, 2003

_____

Before MELLOY, BEAM, and SMITH, Circuit Judges.

_____

BEAM, Circuit Judge.

This dispute is before us on the district court's[1] dismissal of the case, with prejudice, as a sanction for discovery abuse. We affirm.

## I. BACKGROUND

In the spring of 1999, Empire Bank of Springfield, Missouri, ("the bank") loaned $130,000 to Good Stewardship Christian Center (GSCC) to purchase two pieces of property. GSCC defaulted on the loan, and subsequently, in May 2000, the bank commenced foreclosure proceedings on the properties. Possession of one property was relinquished by GSCC and has since been sold. The other property, a residence, is located at 1472 North Washington Street, Springfield, Missouri. Appellant A. Louis Vaughn and his family still reside in that house.

On June 20, 2001, Appellants filed the initial complaint in this case; some three weeks later filed an amended complaint; and four weeks after that filed a second amended complaint. The second amended complaint alleges, among other things, violations of the Equal Credit Opportunity Act, the Fair Housing Act, race discrimination–more than twenty separate causes of action against Empire Bank, executive vice-president McCarty, loan officer Lasater, president Williamson, and Central Bancompany, the holding company that owns Empire Bank (collectively, "Appellees").

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

Relations between the parties and the attorneys in this case quickly grew contentious. In July 2001, GSCC filed a motion seeking to disqualify Jeffrey Groves as counsel for Appellees, asserting that the law firm Mr. Groves was then with had a conflict of interest because it had previously represented the bank. The district court denied this motion. In August 2001, Appellees likewise filed a motion for a protective order due to ex parte communications received by the bank, Williamson, Lasater, and McCarty from Vaughn. In September 2001, the district court granted the motion for protective order, directing that all further communications should be between counsel.

On September 11, 2001, GSCC filed its first motion for sanctions against Appellees' counsel, alleging a failure to cooperate with a scheduling order. GSCC filed a second motion for sanctions regarding the scheduling order on October 2, 2001. The district court denied both motions for sanctions and ordered GSCC to file its own proposed scheduling order. GSCC filed yet another motion for sanctions in November 2001, alleging that attorney Groves made a false statement in violation of the Rules of Professional Ethics. This motion was denied in December 2001. In its order, the district court presciently advised "Plaintiffs to curb their desire to motion the Court at whim, lest they find themselves on the receiving end of the sanctions they so persistently and unfoundedly request."

Following a fax from "the Vaughn sons" to McCarty threatening criminal charges against McCarty, Lasater, and the bank, on March 22, 2002, Appellees filed a motion to dismiss GSCC's suit pursuant to Federal Rule of Civil Procedure 41(b),[2] or in the alternative, a motion for sanctions against Vaughn. Appellees argued that the fax was a violation of the district court's previously entered protective order regarding ex parte communications. In response to the motion for dismissal or

---

[2]This rule governs dismissal of actions. Subsection (b) involves involuntary dismissal for failure to comply with orders of the court. Fed. R. Civ. P. 41(b).

sanctions, Vaughn sent a letter to shareholders and directors of Groves's law firm, Shugart Thomson & Kilroy, P.C., stating, among other things, that "Jeffrey L. Groves evidently thinks black people are unintelligent." Vaughn also filed a complaint against Groves with the Chief Disciplinary Counsel, seeking disbarment.

In ruling on the motion to dismiss or for sanctions, the district court found that Vaughn's fax violated the prior order, fined him $1,000, and entered another order precluding any ex parte contact between any of the plaintiffs and defense counsel. The district court stated "A. Louis Vaughn, or those on his behalf, threaten getting Sue Lasater sent to prison, staging nonviolent rallies, and accuse Mr. Groves of libel and defamation. This type of ex parte communication is not proper, and a violation of the Court's Order."

On February 11, 2002, the Appellees served fifty Requests for Admissions on GSCC, which responded on April 4, 2002, that it could not admit or deny any of the fifty requests made. In June 2002, the district court ruled that GSCC's blanket responses to Appellees' requests were inadequate, ordered them to answer appropriately within ten days, and ordered GSCC and its attorney to pay $250 as a sanction.

The next major point of contention between the parties involved depositions. GSCC deposed, extensively, Williamson, Lasater, and McCarty. Their depositions comprised over seven hundred pages of testimony. However, when Appellees attempted to take Vaughn's deposition, the proceeding was stopped in less than an hour and Appellees sought the appointment of a special master in order to proceed with meaningful discovery. The district court found that "Vaughn refused to answer simple and straightforward questions, [and] engaged in non-responsive speeches." GSCC's attorney also acted inappropriately, by "fail[ing] to advise his client of his responsibility to cooperate in discovery . . . [and by lodging] constant meritless and inappropriate objections, speeches, and interruptions." As a result, the district court

-4-

levied various fines and costs of the deposition against GSCC, Vaughn, and counsel, and appointed a special master. Pursuant to the district court's order, no depositions were to proceed unless and until monies were deposited into the registry of the court by GSCC. In this order, the district court gave notice that further misconduct by Appellants (including failure to pay levied sanctions) could result in the dismissal of the case, with prejudice. GSCC motioned the district court to reconsider its ruling, but instead of doing so, the district court ordered GSCC to pay the fees of the special master ($5000) to the registry of the court.

The last straw involved previously assessed sanctions. Shortly after the district court's order assessing fees for the special master, Appellees informed the court that although GSCC's counsel had paid the assessed sanctions, GSCC and Vaughn had not. The district court thereafter ordered the case dismissed with prejudice, with costs to be taxed against GSCC.

GSCC appeals the dismissal, and also appeals the district court's decision to appoint a special master, to tax GSCC the costs of the appointment, and the denial of sanctions against Appellees' counsel. Also before the court is Appellees' motion to strike portions of one of GSCC's several briefs.

## II.  DISCUSSION

A district court's decision to dismiss a complaint under Federal Rule of Civil Procedure 41(b) is reviewed for an abuse of discretion. Hunt v. City of Minneapolis, 203 F.3d 524, 527 (8th Cir. 2000). Although dismissal with prejudice is an extreme sanction only to be used in cases of willful disobedience of a court order or where there is a pattern of intentional delay, we give the district court a large amount of discretion in regulating and sanctioning misconduct which occurs in proceedings before it. Id.

In the short, but tortured history of this case, GSCC and Vaughn have made inappropriate ex parte communications, in direct violation of a district court order; made numerous baseless motions for sanctions against Appellees' attorneys; failed to properly answer requests for admissions; obstructed discovery during depositions; and failed to pay the sanctions ordered by the district court.

In light of this, we do not think the district court abused its discretion. In deciding whether to dismiss the case as a sanction for discovery abuses, the district court must balance its "need to advance its burdened docket against the consequence of irrevocably extinguishing the litigant's claim." Id. at 527 (quotations omitted). As Appellees point out, even though this case was still at the discovery stage, the district court docket contained over two hundred entries. This occurred despite overt warnings from the district court about the propriety of excessive filings. Thus, lesser sanctions attempted by the district court, including everything from the warnings in the district court's orders to the appointment of a special master, were futile. The futility of lesser sanctions is a further consideration in the district court's balancing calculation. First Gen. Res. Co. v. Elton Leather Corp., 958 F.2d 204, 206 (8th Cir. 1992). Here, the district court's efforts add up. The court did not abuse its considerable discretion in dismissing the case. E.g., Hutchins v. A.G. Edwards & Sons, Inc., 116 F.3d 1256, 1260 (8th Cir. 1997) (affirming dismissal where party persistently refused to answer interrogatories or pay sanctions); Aziz v. Wright, 34 F.3d 587, 589 (8th Cir. 1994) (affirming dismissal based on violation of a court order); Elton Leather, 958 F.2d at 206-07 (affirming dismissal based on delay in discovery).

We think, in fact, that the district court showed a great deal of patience. The federal courts are not the appropriate arena for puerile retaliation against a bank that has the audacity to foreclose on a defaulted loan. A glance through the docket sheet of the proceedings on appeal reveals more of the same conduct–e.g., three requests for extensions to file the initial brief followed by an order to show cause why the case

should not be dismissed for failure to file a timely brief; numerous motions to supplement the record with "amended" and "corrected" briefs after the initial brief finally was filed, few of which comply with our rules; a motion for protective custody from a United States Marshal for plaintiffs and their counsel; a motion for an "extraordinary writ" alleging RICO violations by the district court; and, since argument, an "emergency motion" for a temporary restraining order leveled at a state court. While we stop short of actually sanctioning Appellants and their counsel, we admonish them in the future to better respect the federal judicial process.

In light of our ruling regarding dismissal of the case, we also find that the district court did not abuse its discretion in appointing the special master, and in taxing costs to the Appellants, nor did the district court err in refusing to levy sanctions against Appellees. We also deny Appellees' motion to strike a portion of GSCC's brief.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.